UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Demetrius Mallory,

    Plaintiff,

v.                                                Case No. 10-10581

City of Ferndale, *et al.*,                Honorable Sean F. Cox

    Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff was arrested for driving without a valid drivers license. Plaintiff claims that the defendant police officers used excessive force against him during the booking process, in violation of his Fourth Amendment rights. Plaintiff also asserts state-law claims arising from the same incident. The matter is currently before the Court on Defendants' Motion for Summary Judgment. The parties have fully briefed the issues and the Court heard oral argument on March 10, 2011. For the reasons set forth below, the Court shall GRANT THE MOTION IN PART AND DENY THE MOTION IN PART.

BACKGROUND

Plaintiff Demetrius Mallory ("Plaintiff") filed this action in state court. On February 10, 2010, Defendants removed the action to this Court based on federal question jurisdiction.

Plaintiff's complaint names the following Defendants: 1) the City of Ferndale ("the City"); 2) the Ferndale Police Department; 3) Lieutenant Gary Whiting; 4) Officer Joseph Gentilia; 5) Officer Steven Carroll; 6) Officer Steven Larowe; 7) Officer Amanda Szymanski;

1

and 8) Officer Daniel Kuzdzal. Plaintiff later agreed to dismiss his claims against the Ferndale Police Department. (Docket Entry No. 7).

Following the close of discovery, on October 29, 2010, Defendants City of Ferndale, Lt. Whiting, and Officers Gentilia, Carroll, Larowe, Szymanski and Kuzdzal filed a Motion for Summary Judgment. (Docket Entry No. 18).

The evidence presented by the parties in connection with the pending motion includes the following:

    1.    <u>The Deposition Testimony, Viewed In The Light Most Favorable To Plaintiff:</u>

On February 18, 2009, Plaintiff was driving a vehicle near the intersection of Eight Mile Road and John R. (Pl.'s Dep. at 48). Plaintiff was pulled over by Defendant Amanda Szymanski of the Ferndale Police Department. (*Id*. at 49). It is undisputed that Plaintiff was operating the vehicle without a valid drivers license. (*Id*. at 50-51.) Plaintiff was arrested and transported to the Ferndale Police Department. Plaintiff does not claim that anything improper was done during the traffic stop or his transport to the station. (*Id*. at 55).

Once they arrived at the station, Plaintiff was photographed. (*Id*. at 59). As the booking process continued, there were several officers standing behind the booking counter, including Defendant Gary Whiting.

Defendant Whiting began going through Plaintiff's wallet. (Pl.'s Dep. at 65). Plaintiff testified that Whiting was "disregardingly taking the stuff out of my wallet, throwing it on the counter. And I asked him, you know, did he have to be rude like that, and his exact words were – pardon my french – I do what the fuck I want to do." (Pl.'s Dep. at 65) Plaintiff testified that he had two state identification cards in his wallet, which were both valid. (Pl.'s Dep. at 66-67).

Plaintiff was then asked to sign for his property. (Pl.'s Dep. at 62). Plaintiff initialed the form. Plaintiff testified that the officer who asked to him sign for his property did not have a problem with him having initialed the form. Whiting, however, later looked at the form and commented that Plaintiff's initials on the form were not sufficient. (Pl.'s Dep. at 68). Plaintiff responded that he had served in the Marines "and every time they had us sign a document it was with our initials." Plaintiff admits that at this point he was irritated. Plaintiff then signed his name with an X and Whiting responded that Plaintiff was being a smart ass. Whiting said that "if that's not your signature, then this can't be your signature on your ID cards. And, at that point, he cut up my ID cards." (Pl.'s Dep. at 69). Plaintiff ultimately signed his name. (*Id*.).

After Plaintiff signed his name, Plaintiff was told to take his clothes off. (Pl.'s Dep. at 71-72). Plaintiff testified that he believed he was being instructed to strip naked. (Pl.'s Dep. at 73). Plaintiff did not believe he should have to take his clothes off there because there were women present. Plaintiff testified that he had to be asked more than once to take his clothes off.

In any event, Plaintiff removed his jacket first. He then took off his t-shirt, followed by his belt. When he took off his belt, he placed it over his shoulder. (Pl.'s Dep. at 73). He was not told where to put his belt or asked to put his belt down. Plaintiff testified that at this point:

> A.   Lieutenant Whiting says something to one of the other officers. Oh, this part happened so fast. The issue about my – it became an issue about my belt being over my shoulder. I don't know – I couldn't even remember what it would have been because I didn't – I didn't see an issue about it, but all I remember is Lieutenant Whiting, at that point, *telling me to put my hands behind my back, and with that, I complied.*

(Pl.'s Dep. at 78) (emphasis added). Defendant Joseph Gentilia testified as follows:

> Q.   Okay. I see in that video, it appears to me that he's placing his hands behind his back before Whiting ever comes out. Do you recall that?
> A.   It's possible he did.

3

      Q.      Okay.  Because he was asked to put his hands behind his back, wasn't he?
      A.      Yes.

(Gentilia Dep. at 20-21).

      Plaintiff further testified:

      A.      Because like I said, the last thing I remember is Lieutenant Whiting telling me to put my hands behind my back, and I did that.
      Q.      Did he tell you to put them behind your head?
      A.      No. He said put them behind your back.
      Q.      Behind your back.  Your lower back?
      A.      Yes, sir.
      Q.      So when he tells you to do that, what happens next?
      A.      I put my hands behind my back, and he comes from around – from around the desk – the counter, from around the counter – because the counter is, maybe chest high to me.
      Q.      Okay.
      A.      He comes around the corner, grabs me by my neck, thrusts me and slams my head on the counter.  At that point, he goes to reaching for my left to pulling my feet up from under me, and that's when the remaining officers on – in the building, they all rushed me.

(Pl.'s Dep. at 79-80).  Plaintiff testified that Whiting and Gentilia took him to the ground.  Once he was on the ground, "that's when the rest of the officers joined in."  (Pl.'s Dep. at 83). Defendant Gentilia grabbed Plaintiff's right wrist and put a handcuff on his right arm.  (Pl.'s Dep. at 84).  Plaintiff was face down on the ground and Whiting was on top of him.  (Pl.'s Dep. at 85-86). Whiting had his knee on Plaintiff's head and at one point he was "driving it into [Plaintiff's] left ear."  (Pl.'s Dep. at 87). Meanwhile, Gentilia was punching Plaintiff in the ribs, three to four times.  (Pl.'s Dep. at 87-88).

      After Plaintiff was handcuffed, the officers turned Plaintiff over and proceeded to cut Plaintiff's clothes off him.  (Pl.'s Dep. at 93-94).  Whiting and Gentilia then picked him up off the floor and walked him down to a holding cell.  (Pl.'s Dep. at 96).  Plaintiff testified that as they were walking down the corridor, he told them that he needed medical attention and wanted

to make a phone call, but he received neither. (Pl.'s Dep. at 96-97).

Plaintiff was released the following day. (Pl.'s Dep. at 100). The following morning, Plaintiff went to the VA Hospital for treatment. (Pl.'s Dep. at 101).

2. The Video Recordings:

As Exhibit 3 to their Motion, Defendants submitted a DVD. That DVD contains a "Spirit Revelation Viewer," software to be used to view four files of video recordings. Those video recordings are identified on the DVD as follows: 1) 2009-02-18-2000 Hallway.jpx; 2) 2009-02-18-2100 Bullpen.jpx; 3) 2009-02-18-2100 Cell Hallway.jpx; and 4) 2009-02-18-2100 Hallway.jpx.[1] These video recordings do not have audio.

Notably, Defendants' "Statement of Material Facts Not In Dispute" (Defs.' Br. at ix-x) makes no reference to Exhibit 3 or to any of the video recordings. Defendants' brief makes only two references to the DVD.

First, on page 6 of Defendants' brief, Defendants assert that a "portion of the events is captured clearly on the video and that video contradicts Plaintiff's account of the incident. (Ex. 3, DVD, 2009-02-18-2000-Hallway.dpx, 8:56:42 to 8:56:44)." (Defs.' Br. at 6). Defendants assert that based on this cited portion of video, "this Court should disregard Plaintiff's version of the facts." (*Id.*).

The cited portion of the video appears to show the booking area. The video, however, is taken from a good distance away from the area, making the events on the video very difficult to see. The video apparently shows Plaintiff in the booking area with some unidentified officers.

---

[1] The DVD also contains an audio recording of a 911 call that does not appear to be related to this action.

Again, it is difficult to see what is going on in the video but it appears that Plaintiff is removing his shirt and then his belt. After that, an unidentified officer appears to come up behind Plaintiff's back and push Plaintiff against the counter and then unidentified officers appear to take Plaintiff to the ground and those depicted in the video move out of range of the camera.

Second, Defendants' motion references a different portion of video, that they believe supports their position that Plaintiff did not request medical attention while the officers were escorting him down the hallway. (Defs.' Br. at 11). Defendants contend that, based on the video, "it does not appear that there is any conversation between the Plaintiff and the officers." (*Id.*). There is no audio with these recordings, however, and one cannot determine if Plaintiff made a verbal request based on this video.

## ANALYSIS

A.  Are The Individual Defendants Entitled To Qualified Immunity?

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law. *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.; Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the

plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

Here, Defendants have raised the issue in the instant Motion for Summary Judgment, filed after the close of discovery. Plaintiff has alleged two different Constitutional violations: 1) use of excessive force during the booking process; and 2) deliberate indifference to Plaintiff's serious medical needs. Each must be analyzed separately.

1. <u>Deliberate Indifference To Serious Medical Needs:</u>

In their motion, Defendants assert that Plaintiff cannot show that the officers acted with deliberate indifference to Plaintiff's serious medical needs. (Defs.' Br. at 9).

Plaintiff's Response Brief does not respond to this challenge. At the March 10, 2011 hearing, Plaintiff's counsel agreed that this claim should be dismissed.

2. <u>Excessive Force:</u>

The only Constitutional violation that Plaintiff now alleges is that Defendants used excessive force during the booking process.

The parties agree that because the alleged excessive force occurred during the booking process, and prior to a probable cause hearing, Plaintiff's excessive force claim is analyzed under the Fourth Amendment's objective reasonableness standard. (*See* Pl.'s Br. at 8; Def.'s Br. at 3-4; *see also Aldini v. Johnson*, 609 F.3d 858, 864-67 (6th Cir. 2010)).

      a. <u>Viewing The Facts In The Light Most Favorable To Plaintiff, Has Plaintiff Established A Constitutional Violation?</u>

"In step one of the qualified immunity analysis, the court determines whether th[e] evidence produced by plaintiff, taken in the light most favorable to plaintiff but viewed from the perspective of a reasonable officer on the scene, establishes a claim of excessive force in violation of the Constitution." *Grawey, supra*. In determining whether an excessive force constitutional violation occurred, the court "must look at the objective reasonableness of the defendant's conduct, 'which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007)). "Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Grawey, supra*.

Here, however, Plaintiff asserts his excessive force claim against 6 different officers (Whiting, Gentilia, Carroll, Larowe, Szymanski, and Kuzdzal).

"Each defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Generally, mere presence at the scene, without a showing of direct responsibility for the action, will not subject an officer to liability. *Id.* "To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Id.* (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). With respect to an officer who fails to prevent the use of force by another, liability only attaches where the officer:

1) observed or had reason to know that excessive force would be or was being used; and 2) had both the opportunity and the means to prevent the harm from occurring. *Kijowski v. City of Niles*, 372 Fed.Appx. 595, 599 n.8 (6th Cir. 2010); *Turner, supra*.

                1)        <u>Defendants Whiting and Gentilia:</u>

As in initial matter, Defendants contend that "this Court should disregard Plaintiff's version of the facts" because they are contradicted by the cited portion of the video. However, as the Sixth Circuit recently clarified, alleged facts that are not "blatantly contradicted" by a video or audio recording "remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tennessee*, __ F.3d __, 2011 WL 475008 at * 5 (6th Cir. Feb. 11, 2011).

At oral argument, Defense Counsel conceded that most of the events at issue occurred off camera but asserted that Plaintiff's allegation that Defendants slammed his head on the counter is contradicted by the video. The Court does not believe that the video "blatantly contradicts" Plaintiff's testimony that his head was slammed on the counter. Moreover, even if it did, that would not permit this Court to discredit his entire version of the events. *Coble, supra*, ("Even if part of [Plaintiff's] testimony is blatantly contradicted by the audio recording, that does not permit the district court to discredit his entire version of events.").

Defendants also assert that it is appropriate to use force when a suspect is resisting or refusing to comply with an officer's commands. (Defs.' Br. at 7). They assert that Whiting and Gentilia "confronted a resisting and uncooperative suspect who was refusing to comply with the officers' commands during the booking process." (*Id.* at 8). Defendants direct the Court to Whiting's deposition testimony that Plaintiff refused to comply with verbal commands to put his

9

hands behind his back and to interlace his fingers. (Whiting Dep. at 19). Defendants assert that "[g]iven Plaintiff's resistance and uncooperative attitude," the use of force by Whiting and Gentilia was objectively reasonable.

As Plaintiff's brief stresses, however, the Court must construe the evidence in the light most favorable to Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has submitted sufficient evidence to establish a genuine issue of material fact as to whether Whiting and Gentilia used excessive force. Plaintiff's crime, driving without a valid driver's license, is relatively minor and does not involve violence. Plaintiff was unarmed and, throughout the entire booking procedure, never struck any officer or attempted to flee. (Gentilia Dep. at 19). At all times throughout the booking procedure Plaintiff was surrounded by six or seven officers. (Gentilia Dep. at 21).

Although Plaintiff was slow to comply with initial requests regarding signing the form and undressing, he did comply with those requests. Moreover, Plaintiff testified that *at the time the alleged excessive force occurred he was not resisting and he was complying with the officers' requests.* After he removed his belt and placed it on his shoulder, Whiting told Plaintiff to put his hands behind his back and Plaintiff complied with that request. (Pl.'s Dep. at 78-80; *see also* Gentilia's Dep. at 20-21). Thus, construing the evidence in the light most favorable to Plaintiff, Plaintiff did not actively resist and was compliant when Whiting came around the corner, grabbed Plaintiff by the neck, and slammed his head on the counter. Whiting and Gentilia then took Plaintiff to the ground. Whiting kneeled on Plaintiff's head and drove his knee into Plaintiff's left ear. Meanwhile, Gentilia punched Plaintiff in the ribs three to four

10

times.  (Pl.'s Dep. at 79-88).

          2)      <u>The Remaining Officers:</u>

The remaining officers, Szymanski, Kuzdzal, Larowe, and Carroll, contend that they are entitled to qualified immunity because the evidence does not establish that they used excessive force on Plaintiff.  (Defs.' Br. at 5-6).

At the March 10, 2011 hearing, Plaintiff's counsel indicated that Plaintiff wishes to dismiss his claims against Defendants Szymanski, Kuzdzal, Larowe, and Carroll.

      b.      <u>If So, Was The Right Clearly Established At The Time Of The Violation?</u>

Under the second step of the qualified immunity analysis, the Court must determine whether the right was clearly established at the time of the violation.  "Under this circuit's existing case law, there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others."  *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009).  Thus, the Court shall deny Whiting and Gentilia's request for qualified immunity.

B.     <u>Should The City Be Dismissed Because There Is No Evidence That Custom Or Policy Of The City Was The Moving Force Of The Alleged Constitutional Violations?</u>

In their motion, Defendants assert that Plaintiff's § 1983 claim against the City must be dismissed because there is no evidence that any custom or policy of the City was the moving force behind the alleged Constitutional violations. (Defs.' Br. at 13-16).

Plaintiff's brief does not respond to this challenge and at the March 20, 2011 hearing, Plaintiff's counsel indicated that Plaintiff wishes to dismiss all claims against the City.

C.     <u>Should Plaintiff's State-Law Claims Be Dismissed?</u>

At the March 10, 2011 hearing Plaintiff's counsel stated that Plaintiff is not asserting

malicious prosecution, false arrest, or false imprisonment claims in this action. He stated that Plaintiff does seek to assert assault and battery and gross negligence claims against Whiting and Gentilia.

Defendants contend that these claims must be dismissed.

Defendants contend that they are entitled to governmental immunity from Plaintiff's assault and battery claim. They claim that under Michigan law, where a plaintiff pleads an intentional tort, the court must determine whether the defendant has established that he is entitled to governmental immunity under the *Ross* test by showing: 1) the acts were taken during the course of employment and the employee was acting, or reasonably believed he was acting within the scope of this authority; 2) the acts were undertaken in good faith, or were not undertaken with malice; and 3) the acts were discretionary as opposed to ministerial. (Defs.' Br. at 17). Defendants contend that all elements are met here. With respect to the second element, Defendants assert "there is no allegation in Plaintiff's complaint, nor is there any evidence in the record that the alleged acts were not undertaken in good faith."

In response, Plaintiff does not contest elements one or three for purposes of this motion. Plaintiff notes, however, that his complaint *does* allege that Defendants "acted maliciously by assaulting Plaintiff." (Compl. at ¶ 40). Plaintiff also references his testimony that Whiting and Gentilia used excessive force even though Plaintiff was not resisting and had complied with the officers instruction to put his hands behind his back.

The Court concludes that there is a genuine issue of material fact as to whether Whiting and Gentilia are entitled to governmental immunity.

Finally, Defendants challenge Plaintiff's gross negligence claim. Although it is unclear

12

from Plaintiff's complaint whether Plaintiff is asserting a separate claim of "gross negligence" or whether Plaintiff's complaint simply alleges the officers were grossly negligent to plead in avoidance of M.C.L. § 691.1407, at the hearing Plaintiff's counsel indicated Plaintiff is asserting a gross negligence claim against Whiting and Gentilia. Nevertheless, Plaintiff's brief does not address Defendants' argument that there is no separate cognizable claim for "gross negligence" under Michigan law and that any gross negligence claim asserted by Plaintiff is simply an excessive force claim improperly reasserted as a negligence claim.

The Court agrees that a separate "gross negligence claim," is not cognizable under Michigan law under these circumstances. *See Vanvorous v. Burmeister*, 262 Mich.App. 467, (2004); *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007). Accordingly, the Court shall dismiss Plaintiff's gross negligence claims.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that the Court DISMISSES:

1) all claims against the City;

2) all claims against officers Szymanski, Kuzdzal, Larowe, and Carroll;

3) any malicious prosecution, false arrest and false imprisonment claims asserted by Plaintiff;

4) Plaintiff's gross negligence claims against Whiting and Gentilia;

5) Plaintiff's § 1983 claim against Whiting and Gentilia, based on their alleged deliberate indifference to Plaintiff's serious medical needs.

The motion is DENIED in all other respects.

Accordingly, only the following claims remain in this action: 1) Plaintiff's § 1983 claim against Defendants Whiting and Gentilia, based on their alleged excessive force during the booking process; and 2) Plaintiff's assault and battery claim against Whiting and Gentilia based on that same conduct.

IT IS SO ORDERED.

                                          S/Sean F. Cox
                                          Sean F. Cox
                                          United States District Judge

Dated: March 11, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 11, 2011, by electronic and/or ordinary mail.

                                          S/Jennifer Hernandez
                                          Case Manager